Opinion issued March 14, 2023



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-22-00689-CV**

———————————

**IN THE INTEREST OF A. M. a/k/a F. E. M., A CHILD**

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-01237J**

---

**MEMORANDUM OPINION**

Appellant mother challenges the trial court's order terminating her parental rights to her minor child, A.M. a/k/a/ F.E.M. ("Frank"), and awarding the Department of Family and Protective Services (the "Department") sole managing conservatorship of him. Mother contends that the evidence is legally and factually insufficient to support the trial court's findings that she: (1) failed to comply with

the provision of a court order that specifically established the actions necessary to obtain return of the child; and (2) used illegal drugs in a manner that endangered the child and failed to complete a court ordered substance abuse program. *See* TEX. FAM. CODE § 161.001(b)(1)(O) (service plan), (P) (substance abuse). She also contends that there is legally and factually insufficient evidence to support the court's finding that termination of her parental rights is in the best interest of the child. *Id.* § 161.001(b)(2). We affirm.

## Background

In April 2021, law enforcement responded to a motel concerning a drug overdose. Mother and father were found unconscious in a parking lot. It was suspected that they had overdosed on PCP, and they were taken to the hospital. The Department was contacted when a child, O.H. ("Oscar"), was found strapped in a car seat in the motel. He was placed in the Department's temporary managing conservatorship.

One month later, mother gave birth to Frank, who is the subject of this suit. Frank and Oscar have the same parents. At the time of Frank's birth, his meconium tested positive for cocaine. Frank was placed with his paternal grandmother. The Department was appointed temporary managing conservator of Frank.

The trial court entered an order establishing the actions necessary for mother to obtain the return of Frank. The Department's plan required mother to:

(1) maintain employment for more than six months; (2) maintain stable housing for more than six months; (3) complete parenting classes; (4) refrain from engaging in any illegal activities; (5) attend all court hearings; (6) submit to random urinalysis drug testing twice a month and hair follicle testing once every three months; (7) follow recommendations of a psychosocial evaluation; (8) follow recommendations of a psychiatric evaluation; and (9) sign a release of information. The plan noted that mother was unwilling to work services at the time and that she had tested positive for illegal substances, continued to use them while pregnant, and suffered from mental health issues.

A.    Trial

The case proceeded to trial in August 2022. Before testimony began, the father signed a voluntary relinquishment affidavit.[1] In reviewing it, the trial court took judicial notice of Oscar's case and stated that mother's rights to Oscar had been terminated pursuant to subsection (O), no child support had been ordered, and the case was on appeal. The trial court then proceeded to hear testimony in the trial regarding mother's rights to Frank. The court heard testimony from the Department's supervisor, the child advocate assigned to the case, and the paternal grandmother.

---

[1]    Father's parental rights were also terminated and are not the subject of this appeal.

3

### 1. Department Supervisor

The Department supervisor testified that the Department became involved with Frank's parents when Frank's older brother Oscar was found in a motel room, strapped in a car seat. Oscar's parents were found unconscious outside the motel room and taken to a hospital. At the time, mother was pregnant with Frank, and she gave birth to him one month later. Frank's meconium tested positive for cocaine, and he was removed from his parents' care at birth. He was placed with his paternal grandmother. Oscar had also been placed with the paternal grandmother.

The supervisor testified that mother had prior involvement with the department for physical abuse of one of her other children and that her parental rights to Oscar were terminated in March 2022. The circumstances of that termination included that mother denied drug use, continually tested positive for drugs, and was discharged from services without completing them successfully. She did not have stable housing or employment.

Regarding Frank, the supervisor confirmed that a family service plan had been made an order of the court, yet mother had not successfully completed her services. Specifically, mother had not provided proof of participating in an anger management class or individual counseling, and she was in denial of her drug use, though she engaged in substance abuse treatment. The supervisor had spoken to mother's drug abuse therapist a few days before trial, and she awaited paperwork

4

regarding mother's unsuccessful discharge from substance abuse treatment. The supervisor commented that mother had been offered substance abuse treatment in Oscar's case. Therefore, she had been offered services since at least July 2021, though she never successfully completed a treatment program. When mother spoke with the supervisor on the phone a month before trial, mother told the supervisor that she had successfully completed substance abuse treatment. The supervisor informed mother that she had spoken with the drug counselor who stated that mother would be unsuccessfully discharged from the program due to her denial of drug use.

Regarding drug testing, the supervisor testified that although mother was ordered to refrain from drug use, mother consistently tested positive. Most recently, mother tested positive in May 2022 and did not appear for an ordered drug test on June 22, 2022. When the supervisor spoke with mother about the positive result, mother stated that she did not use drugs.

The supervisor testified that mother gave her four weekly paycheck stubs from James Coney Island, a fast-food restaurant. In the supervisor's opinion, two of them may have been created because they did not print the same way. The paychecks covered one week in March, two nonconsecutive weeks in April, and one week in June 2022. They ranged from $45.59 to $142.90 each. The supervisor believed that based on the amount mother was receiving in each check, she was

5

working approximately 1.5 days a week. The supervisor did not know whether mother had remained employed because she had not provided additional proof of employment, and mother never provided paychecks for the month of May.

Regarding housing, mother provided the supervisor with a handwritten note from her grandmother indicating that mother resided with her. The supervisor received the note the month before trial. The supervisor testified that she had visited the home several times, and mother was never there. The supervisor was concerned that mother did not reside with her grandmother.

Regarding visits with Frank, the supervisor stated that mother had not been visiting with Frank because there is a court order of no contact. She testified that at the last hearing prior to trial, the no contact order was extended to add Frank's caregivers, including his paternal grandmother, after mother had threatened and harassed them. Notwithstanding the order, mother continued to contact Frank's paternal grandmother and show up at her house unannounced. The supervisor testified that mother contacted the paternal grandmother the week before trial regarding mother's behavior, and the supervisor had informed the grandmother to call the police if mother appeared at her home. Mother had not provided financial support for Frank since his birth, except for a few gift cards left in the caregiver's mailbox shortly before trial.

The Department supervisor mentioned that mother can be very aggressive. She testified that on multiple occasions, mother called her nonstop, as frequently as 45 times in 2 to 3 minutes. When the supervisor eventually temporarily blocked mother's number so the calling would stop, mother immediately called from another number.

The supervisor stated that the Department made reasonable efforts to attempt to reunify mother with Frank by offering services, speaking with her numerous times, and referring her to additional providers whenever she was discharged from a program. The supervisor did not believe that mother could provide a stable environment for Frank. The supervisor stated that mother can be very aggressive, and that her behavior was not safe for a child.

The supervisor stated that when Frank was born, mother refused to complete any paperwork that would have allowed him to obtain a birth certificate. In the absence of a birth certificate, Frank was unable to obtain a social security card.

According to the Department supervisor, Frank was thriving, meeting all his milestones, and there were no concerns with his placement with his paternal grandmother. Frank, Oscar, and two older siblings also lived with the paternal grandmother, whose husband and daughter both lived in the house and helped with childcare. Frank was bonded to his caregivers, and all four children enjoyed playing together. The supervisor believed termination was in Frank's best interest

as he was in a stable, loving, drug-free home with his brothers, and all his needs were being met.

On cross-examination, the supervisor acknowledged that mother completed some of the assigned tasks from the family service plan. Mother signed a release of information, provided a few paychecks from James Coney Island, and provided a handwritten letter stating she lived with her grandmother. Mother completed parenting classes and psychosocial and psychiatric evaluations. Mother had participated in substance abuse treatment. She was referred to an agency for an assessment and was diagnosed in July 2021 with cannabis and amphetamine use. She was discharged a month later for failure to attend. The Department then referred mother to a second agency who diagnosed mother with alcohol and cocaine dependence. Mother was discharged a few months later due to nonattendance. Finally, mother was referred to a third agency in April 2022, and she was unsuccessfully discharged from that program due to her denial of drug use.

### 2. Child Advocate

The child advocate testified that she had been on the case for about eight months and that the agency agreed with the Department's recommendations to terminate mother's parental rights and for Frank to remain with his paternal grandmother. The child advocate stated that both a previous coordinator and a former volunteer attempted to contact mother and were unsuccessful.

The child advocate said her termination recommendation was based on concerns of mother's inability to complete services and her aggressive and hostile behavior. The child advocate stated that mother has called and made threats to the paternal grandmother on multiple occasions. Frank has been with his grandmother for his entire life and is well bonded, and it would not be in his best interest to remove him from the placement.

The child advocate stated that when Frank came into care, he experienced residual effects of drugs in his system. He shook for about five or six weeks. At the time of trial, at 13 months old, he was developmentally on target and doing well.

### 3.    Paternal Grandmother

The paternal grandmother testified that Frank is doing well in her home and that he attends daycare. She stated that she can meet his emotional and physical needs and that her long-range goal is to adopt Frank. She had not been able to get a social security card for Frank, and she intended to change his name.

She stated that when Frank came to her home, he was four days old. Due to being born with drugs in his system, Frank often shook. The paternal grandmother took Frank to the doctor, who advised her to go to the emergency room if the shaking became violent. The shaking never became violent and after six weeks, it stopped.

The paternal grandmother testified regarding harassment by mother. She stated that after a status hearing mother came to the grandmother's house. The paternal grandmother was not there, so mother went to another family member's house down the street and demanded the return of her children. The family member told the paternal grandmother that mother looked distraught and high. Mother left but said she would be back to get her children. The paternal grandmother testified that mother's behavior is disturbing and counterproductive to Frank's safety and wellbeing.

The paternal grandmother testified that she lives with her husband and her adult daughter, who moved in to help them raise the four grandchildren in their care. Frank is bonded to his siblings and relatives.

### 4. Mother

Mother was initially in attendance at the Zoom trial. She began talking out of turn during the Department supervisor's testimony. She stated that she could not hear, and she was going to leave. The court admonished mother not to interrupt and that she would get a chance to speak if she remained in the hearing. When mother interrupted a second time, stating that she was going to leave, the court instructed the reporter to remove mother from the hearing.

Near the end of the Department's witnesses, mother's attorney texted mother to see if she would be rejoining the trial. Mother's attorney informed the court that mother did not respond. Mother never rejoined the hearing.

## B.   Trial Outcome

The trial court terminated mother's parental rights pursuant to subsections (O) and (P). *See* TEX. FAM. CODE § 161.001(b)(1)(O), (P). The court found that termination was in Frank's best interest. The court entered a permanent injunction against mother, stating that she was to have no contact with Frank or his caregivers. Mother appealed.

## Sufficiency of the Evidence

On appeal, mother challenges the sufficiency of the evidence to support the trial court's findings that her rights should be terminated pursuant to subsections (O) and (P). *See* TEX. FAM. CODE § 161.001(b)(1)(O), (P). She also challenges the sufficiency of the evidence to support the trial court's finding that termination was in Frank's best interest. *Id.* § 161.001(b)(2).

## A.   Standard of Review

A trial court may order termination of the parent-child relationship if the Department proves, by clear and convincing evidence, one of the statutorily enumerated predicate findings for termination and proves that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b); *see*

*In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (recognizing that federal Due Process Clause and Texas Family Code both mandate "heightened" standard of review of clear and convincing evidence in parental-rights termination cases). The Department must prove by clear and convincing evidence both a statutorily prescribed predicate finding and that termination is in the child's best interest. *Id.* at 803. The Family Code defines "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

To assess the legal sufficiency of the evidence in a termination proceeding, we consider all evidence in the light most favorable to the trial court's finding and decide "whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). We assume that any disputed facts were resolved in favor of the finding if a reasonable factfinder could have done so. *J.F.C.*, 96 S.W.3d at 266. When "no reasonable factfinder could form a firm belief or conviction" that the matter on which the Department bears the burden of proof is true, we "must conclude that the evidence is legally insufficient." *Id.* In reviewing the evidence's factual sufficiency, we consider the entire record, including disputed evidence. *Id.* The evidence is factually

insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have resolved in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction. *Id.*

We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of the witnesses. *See id.* at 109.

## B.    Predicate Finding Under Subsection 161.001(b)(1)(O)

In her first and second issues, mother contends that the evidence was legally and factually insufficient to support the trial court's predicate findings that termination was warranted under Family Code subsections 161.001(b)(1)(O) and (P).

Subsection (O) provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under [Family Code] Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE § 161.001(b)(1)(O). Thus, pursuant to subsection (O), the Department must prove that (1) it has been the child's temporary or permanent managing conservator for at least nine months; (2) it took custody of the child as a result of a removal from the parent under Chapter 262 for abuse or neglect; (3) a court issued an order establishing the actions necessary for the parent to obtain the return of the child; and (4) the parent did not comply with the court order. *See id.*

Mother does not dispute that (1) the Department has been Frank's temporary managing conservator for at least nine months, (2) the Department had taken custody of Frank as a result of a removal from the parent under Chapter 262 for abuse or neglect, and (3) the court-ordered family service plan constituted an order of the trial court establishing the actions necessary for her to be reunited with Frank.

Preliminarily, mother argues that the trial court erred by basing its subsection (O) finding on information contained in the case file from another case, namely the case terminating her rights to Frank's older brother Oscar. Mother asserts that taking judicial notice of the truth of factual statements contained in pleadings and other documents in the case file for another case was erroneous. "It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties." *Gardner v. Martin*, 345 S.W.2d 274, 276 (1961); *In re Shifflet*, 462

S.W.3d 528, 539 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed." *Shifflet*, 462 S.W.3d at 539 (quoting *In re R.S.D.*, 446 S.W.3d 816, 820 n.4 (Tex. App.—San Antonio 2014, no pet.) (internal quotation marks and citation omitted)). "Therefore, a court may take judicial notice that a pleading has been filed in the case, that it has signed an order, or of the law of another jurisdiction," but "[a] court may not take judicial notice of the *truth* of allegations in its records." *Id.* (emphasis in original) (citation omitted). Mother argues that the trial court based its finding on facts from Oscar's case, such as that mother was unsuccessfully discharged from several services, tested positive for drugs, and had her parental rights terminated to Oscar pursuant to subsection (O). She argues that without this information, there was insufficient evidence to terminate her rights to Frank based on subsection (O). We disagree.

Prior to the beginning of testimony, the trial court, in reviewing father's voluntary relinquishment affidavit, announced that it was taking judicial notice of Oscar's case. The court orally stated that the judgment involving Oscar did not order child support and that mother's rights to Oscar were terminated under subsection (O). These facts were not disputed and were generally known. *See Shifflet*, 462 S.W.3d at 539. The remaining facts that mother complains about came into evidence during mother's trial regarding Frank. The Department supervisor

15

testified that mother was discharged from three different substance abuse treatment programs without completing them successfully. She also testified that mother had tested positive for drugs. Additionally, mother's drug test results were listed in the family service plan and permanency report, both of which were admitted into evidence without objection.

Even without judicial notice of Oscar's case, the record in this case contains sufficient evidence to support the trial court's decision to terminate mother's rights to Frank under subsection (O). At trial, the Department supervisor testified that the agency created a family service plan for mother, which was filed with the court and made an order of the court. Mother was ordered to (1) complete parenting and anger management classes, (2) abstain from drugs and complete a substance abuse assessment and treatment, (3) refrain from criminal activity, (4) sign a release of information, (5) participate in court hearings, and (6) obtain and maintain stable housing and employment for six months.

The evidence reflects that mother failed to complete all her court-ordered services. With respect to employment, mother provided paycheck stubs as proof of employment for one week in March, three weeks in April, and two weeks in June. The Department supervisor testified that those were the only paycheck stubs mother provided. The caseworker dd not believe the mother was employed based

16

on the information she received. Mother did not offer any further evidence to show that she was indeed employed for six months.

With respect to the requirement that mother test negative for drugs, the caseworker testified that mother tested positive for drugs continually throughout the case. She tested positive for cocaine and heroin in her hair in February 2022 and she tested positive for cocaine in May 2022. Mother did not show up for tests in June and July of 2022. The family service plan, which was admitted into evidence, listed additional times that mother tested positive for drugs or did not appear for drug testing.

Finally, with respect to psychosocial and psychiatric evaluations, the caseworker stated that mother did not follow the recommendations. Mother argues that this testimony was conclusory, but the testimony demonstrated that mother did not comply with the service plan. *See In re S.N.P.*, No. 04-20-00372-CV, 2020 WL 7365445 at *2 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) (caseworker's testimony that mother did not complete any required services except for her psychosocial assessment was a statement of fact and not a conclusory statement.)

Texas courts generally take a strict approach to subsection (O)'s application, *In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.), and a parent's failure to complete one requirement of her family service plan supports

17

termination under that subsection, *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Nonetheless, mother argues that termination under subsection (O) is not justified based on the affirmative defense found in Family Code subsection 161.001(d):

> (d) A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that:
>
>> (1) the parent was unable to comply with specific provisions of the court order; and
>>
>> (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

TEX. FAM. CODE § 161.001(d). Mother argues that she did complete some requirements, as evidence of substantial compliance with the family services plan. On appeal, mother does not argue that her failure to complete all the family service requirements was because she was unable to comply nor does she argue that she made a good faith effort and her failure to comply was not attributable to her. *See id.* On the contrary, the record reflects that mother failed to abstain from using drugs and that she failed to appear for the last two drug tests before trial. The record reflects that though mother participated in psychosocial and psychiatric evaluations, she did not follow the recommendations from those evaluations. The caseworker testified that mother was discharged from substance abuse treatment

18

due to lack of attendance and denial of her drug use. She did not complete substance abuse treatment. Mother did not establish by a preponderance of the evidence that her failure to comply with the service plan was due to her inability to complete it or not attributable to her. *See id.*

Applying the applicable standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's predicate finding under subsection (O). *See* TEX. FAM. CODE § 161.001(b)(1)(O). We further hold that the evidence is legally and factually sufficient to support a finding by the trial court that mother failed to carry her burden to prove, by a preponderance of the evidence, that she made a good-faith effort to comply with the court order and that her failure to comply with the court order is not attributable to her own fault. *See id*. § 161.001(d).

We overrule the portion of mother's issue challenging the legal and factual sufficiency of the evidence to support the trial court's predicate finding under subsection 161.001(b)(1)(O). Because only one predicate ground is needed to support a termination order, we need not address the remainder of mother's issue challenging the legal and factual sufficiency of the evidence supporting the predicate finding under subsection 161.001(b)(1)(P). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## C.    Best-Interest Finding

Mother challenges the legal and factual sufficiency of the trial court's best-interest finding.

### 1.    Legal Principles

In *Holley v. Adams*, the Supreme Court of Texas identified several non-exclusive factors that we consider when determining whether the termination of a parent's rights is in the child's best interest. 544 S.W.2d 367, 371–72 (Tex. 1976). The factors include: (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) the current and future physical danger to the child; (4) the parental abilities of the person seeking custody; (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child; (6) the plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not proper; and (9) any excuse for acts or omissions of the parent. *Id.* These factors are not exhaustive, and it is not necessary that the Department prove all these factors "as a condition precedent to parental termination." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence concerning some of the factors does not preclude a factfinder from forming a firm belief or conviction that termination is in the children's best

interest. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In addition, the Family Code sets out factors that courts should consider in determining whether a child's parent is willing and able to provide the child with a safe environment, including: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude and frequency of harm to the child; (4) whether the child has been the victim of repeated harm after the initial intervention by the Department; (5) whether there is a history of abusive or assaultive conduct or substance abuse by the child's family or others who have access to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) the willingness of the child's family to seek out, accept, and complete counseling services; (8) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and (9) whether the child's family demonstrates adequate parenting skills, including providing minimally adequate care for the child's health and nutritional needs, care consistent with the child's physical and psychological development, guidance and supervision consistent with the child's safety, a safe physical home

environment, and an understanding of the child's needs and capabilities. TEX. FAM. CODE § 263.307(b); *In re A.C.*, 560 S.W.3d 624, 631 n.29 (Tex. 2018).

The best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re Y.G.*, No. 01-22-00181-CV, 2022 WL 3362953 at *13 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied) (mem. op.) (citing *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *B.R.*, 456 S.W.3d at 616; *see C.H.*, 89 S.W.3d at 28 (stating that past performance as parent "could certainly have a bearing on [parent's] fitness to provide for [the child]" and indicating courts should consider prior history of child neglect in best-interest analysis).

### 2. Analysis

Multiple factors support the trial court's finding that termination of mother's parental rights to Frank was in the child's best interest.

The evidence showing that mother failed to complete all the tasks and services required in her service plan not only supports the predicate finding, but it also supports the trial court's best-interest finding. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding that evidence that parent failed to complete court ordered services can support best-interest finding). In short, "[a] fact finder may

infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [s]he does not have the ability to motivate [herself] to seek out available resources needed now or in the future." *J.M.T.*, 519 S.W.3d at 270.

Despite being required to participate in substance abuse treatment and refrain from illegal drug use to be reunited with Frank, mother did not refrain from using illegal drugs. She tested positive for drugs in May of 2022, three months before trial. She did not appear for drug testing in June or July of 2022. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (recognizing that factfinder could reasonably infer that parent's failure to complete scheduled screenings indicated she was avoiding testing because she was using drugs). She also tested positive in June, July, August, and October of 2021. Additionally, the Department supervisor testified that mother was unsuccessfully discharged from substance abuse treatment. Mother's termination from the program and her positive drug test three months before trial are particularly probative because Frank was removed from mother's care due to mother's drug use. *See* TEX. FAM. CODE § 263.307(b)(10), (11) (stating courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within reasonable time); *Holley*, 544 S.W.2d at 372 (listing as

23

best-interest factors, programs available to assist these individuals to promote best interest of child and acts or omission of parent that may indicate parent-child relationship is not proper); *J.M.T.*, 519 S.W.3d at 270 (recognizing that father's failure to refrain from illegal drug use and complete substance abuse counseling and individual therapy supported best-interest finding).

As we have previously recognized, "[p]arental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest." *Id.*; *see* TEX. FAM. CODE § 263.307(b)(8) (stating courts may consider whether there is history of substance abuse by child's family or others who have access to the child's home). Mother's drug abuse is relevant to multiple *Holley* factors, including her parenting abilities and the stability of her home as well as Frank's emotional and physical needs now and in the future and the physical danger in which Frank could be placed no and in the future. *See Holley*, 544 S.W.2d at 372 (factors two, three, four, and seven); *In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (recognizing pattern of drug abuse relevant to multiple *Holley* factors).

The trial court could reasonably infer that mother's drug use would continue in the future. Mother used drugs while pregnant with Frank, and he was born with drugs in his system. Mother had positive drug tests throughout the pendency of the case. Mother denied using drugs to the caseworker after testing positive, and she

was released from substance abuse treatment for being in denial of her drug use and lack of attendance. The Department referred mother to multiple service providers during the pendency of the case. Even though she knew her parental rights were in jeopardy, mother failed to complete the counseling provided to her. The evidence supports that mother's history of illegal drug use, her positive drug tests, and her lack of completion of therapy supported an inference by the trial court that mother was at risk for continuing drug use. *See J.M.T.*, 519 S.W.3d at 269.

The evidence regarding mother's income was scant. Mother provided a few paychecks, covering five total weeks during the pendency of the case. The Department supervisor testified that she believed mother worked one or two days a week, based on the amounts listed on her paystubs. The supervisor also questioned the veracity of two of the paystubs provided by mother, stating that they did not print with the same marks as the other three. Mother's lack of employment is probative of Frank's best interest because, "[a] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.); *see Holley*, 544 S.W.2d at 372 (best-interest factors include stability of home and child's physical and emotional needs); *see also In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007,

no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child.").

In contrast, the uncontroverted evidence showed that, at the time of trial, the paternal grandmother, who had cared for Frank for all his life, had a safe and stable home. The paternal grandmother lived with her husband and together they cared for Frank and three of his siblings. Frank's aunt also moved into the home to assist in caretaking. The witnesses testified that Frank was bonded with his grandparents and his siblings and that all his needs were met. The paternal grandmother hoped to adopt Frank. The evidence regarding the paternal grandparent supports the trial court's best-interest finding under the following factors: the emotional and physical needs of the child now and in the future and the stability of the home or proposed placement. *See Holley*, 544 S.W.2d at 372 (factors two and seven). We note that a child's need for a permanent home has been "recognized as the paramount consideration in a best interest determination." *In re B.J.C.*, 495 S.W.3d at 29, 39 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Frank was thirteen months old at the time of trial. The *Holley* factor regarding the desires of the child is neutral in this case. *See Holley*, 544 S.W.2d at 372 (factor one). Frank's age does weigh in favor of the best-interest determination. *See* TEX. FAM. CODE § 263.307(b)(1) (providing that court may

26

consider child's age and physical and mental vulnerabilities in best-interest determination); *J.M.T.*, 519 S.W.3d at 270 (noting 14-month-old child's age weighed in favor of trial court's finding that termination was in best interest); *see also In re A.L.B.*, No. 01-17-00547-CV, 2017 WL 6519969, at *5 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (mem. op.) (stating children's young ages, five and six years old, rendered them "vulnerable if left in the custody of a parent unable or unwilling to protect them or to attend to their needs"). When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with his parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

On balance, the evidence showed that the applicable statutory factors and *Holley* factors weigh in favor of the trial court's best-interest finding. After viewing all the evidence in the light most favorable to the best-interest finding, we conclude that the evidence was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between mother and Frank was in the child's best interest.

We overrule mother's challenge to the best interest finding.

## Conclusion

We affirm the trial court's decree of termination.

Peter Kelly
Justice

Panel consists of Justices Kelly, Farris, and Radack.[2]

---

[2] The Honorable Sherry Radack, Senior Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.